IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM HENRY HARRISON, | : | CIVIL NO . 3:CV-07-0570 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WARDEN CAMERON LINDSAY, | : | |
| USP CANAAN, FEDERAL BUREAU | : | |
| OF PRISONS, | : | |
| Respondent | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, William Henry Harrison ("Harrison"), an inmate confined to the United States Penitentiary at Canaan, Waymart, Pennsylvania. (Doc. 1.) Harrison contends that his due process rights were violated in the context of a disciplinary hearing. He also claims that employees of the Bureau of Prisons ("BOP") conspired against him, retaliated against him, discriminated against him, and violated his equal protection rights. He seeks to have the disciplinary hearing findings and sanctions vacated and expunged, and to have his good time credits restored. He also requests "a transfer back to Petersburg FCC (Low) facility with no further retaliation. . . ." (Doc. 1, at 12.) For the reasons discussed below, certain claims will be dismissed without prejudice to Harrison's right to pursue them in a properly filed civil rights complaint. The claims properly brought in this habeas petition will be denied.

I.     **Factual Background**

On March 30, 2006, Harrison received an incident report charging him with offense code violations 297, "Use of the telephone for abuses other than criminal (Talking in Code)," and 328, "Giving anything of value to another." (Doc. 1, at 34.) The report, which was authored by Special Investigative Services Officer H. Simmons ("reporting officer"), contained the following information:

> Description of Incident (Date: 3-30-06 Time: 11:30 a.m. Staff became aware of incident) March 14, 2006 you placed a telephone call to (804) 687-9302, which is an approved number for you to call. During the call, you spoke with an unidentified female in a coded language. Further review of the telephone call reveals that by using this coded language you were able to instruct the female believed to be your wife to send inmate James, Ivander, Reg. No. 98292-0171, a $50.00 money order. You also told her that you were sending out a form in the amount of $1050.00, and the extra $50.00 was for inmate James. Institution records reflect inmate James received a money order in the amount of $50.00, through the lockbox Des Moines, Iowa on 3-20-2006, at 5:48 a.m., from your wife's address in Richmond, Va.

(Id.) On April 3, 2006, Harrison attended a hearing conducted by the Unit Disciplinary Committee ("UDC"). The UDC referred the matter to a disciplinary hearing officer ("DHO") for further hearing.

The disciplinary hearing was held on May 17, 2006. Harrison had no procedural issues with the administrative processing of the incident report.[1] (Doc. 1, at 14.) He waived

---

[1] Harrison did advise the DHO that he was appealing the incident report because the UDC hearing was not completed within 72 hours. The DHO advised him that "UDC hearings are held within three days excluding the day the report is written, weekends, and holidays." (Doc. 1, at 14.) As promised, Harrison appealed the decision and it was concluded that the hearing was conducted in a timely manner, excluding the date the report was written and the weekend. (Id. at 37.)

2

his right to a staff representative and, after being advised of his rights and indicating that he understood them, he made the following statement:

> I was not speaking in code. That is the language of my people. I am a Nation of Gods and Earth, the five (5%) percenter. That is the way I talk when I talk to family and Nation members. Mr. Harrison stated he never heard the tape and wanted to hear it.

(Doc. 1, at 14.) No witnesses were requested.

In finding that Harrison committed the charged acts, the DHO relied on the following:

> The evidence relied upon to support this finding was on March 14, 2006, you placed a telephone call to 804-687-9302, which is an approved number for you to call. During the call, you spoke with an unidentified female in coded language. Further review of the telephone call reveals by using this coded language, you were able to instruct the female, believed to be your wife, to send inmate James, Ivander, 98292-071, a $50.00 money order. You told her you were sending out a form in the amount of $1050.00, and the extra $50.00 was for inmate James. Institution records reflect inmate James received a money order in the amount of $50.00, through the lockbox in Des Moines, Iowa, on March 20, 2006, at 5:48 am, from your wife's address in Richmond, VA.
>
> At the DHO hearing you denied the charge and stated, I was not speaking in code. That is the language of my people. I am a Nation of Gods and Earth, the five (5%) percenter. That is the way I talk when I talk to family and Nation members. You stated you never heard the tape and wanted to hear it. The DHO advised you the tape would not be provided at the hearing. At the DHO hearing, the DHO advised you of your right to have staff representation and witnesses. When asked by the DHO if you wanted a staff representative, you indicated, "no".
>
> In deciding the issue, I considered your denial that this is your "language"; however, English words were spoken and the words you stated mean nothing in the context they were used. However, when decoded the words spoken instructed the caller you were sending out a form in the amount of $1050.00, and the extra $50.00 was for inmate James. Also, the DHO can not ignore the fact the first letter of each word spelled out Ivander James' name and register number. Another fact that can not be ignored is there is an inmate living in your housing unit with the name Ivander James, Jr., who also has the exact register number in the coded

> conversation. The day after the telephone conversation, March 15, 2006, your wife purchased a $50.00 money order and mailed it [to] inmate Ivander James, Jr., 98292-0171. And then as indicated in the coded conversation, on March 22, 2006, you had $1050.00 withdrawn from your account. The facts listed above are to [sic] exact for this to be a coincidence or language misinterpretation.
>
> Accordingly, I find it prudent to hold you accountable for violating the prohibited acts, code 297, Use of the Telephone for Abuses other than Criminal, and code 328, Giving Anything of Value to Another, (Inmate Discipline Policy).

(Doc. 1, at 16.) The DHO relied on the following documentary evidence in reaching his conclusion: 1) copy of Postal Money Order to James Ivander and copy of the envelope that contained the money order; 2) copy of approved visitor information for Alicia Wingate, wife of William Harrison; 3) copy of TRUFACTS deposits for James Ivander; 4) copy of TRUFACTS withdrawals for William Harrison; 5) INTRUDR Call information for William Harrison identifying number that Harrison called as belonging to Mr. Harrison's spouse; and 6) Memorandum dated March 30, 2006, from H. Simmons, SIS. (Doc. 1, at 15.)

Harrison was sanctioned with seven days of disciplinary segregation, twenty-seven days' disallowance of good conduct time, and six months of loss of telephone privileges based on the following:

> The use of a telephone while incarcerated is a privilege, not a right. It is an important part of the institution's security that inmates only be allowed to contact those persons authorized. Not only is this an internal security matter but the Bureau of Prisons has an obligation, to the public at large, to ensure that inmates are not using the telephone to contact unauthorized persons, for criminal activity, drug transactions, conduction businesses or to threaten or harass member [sic] of the public. For these reasons, the Bureau of Prisons has developed telephone monitoring procedures.
>
> The action/behavior on the part of any inmate to give or receive money or

4

> anything of value to/from another inmate or person threatens the ability of the staff to provide a safe and orderly operating institution. This type of behavior poses a serious threat to the health, safety, and welfare of not only the inmate(s) involved but all other inmates and staff alike. This action/behavior has shown in the past to pose a serious threat and results in injuries, even deaths, to both inmates and staff.
>
> Hopefully, the sanctions imposed will have a significant impact upon your future conduct and will deter you from Unauthorized use of the Telephone in the future and Giving Anything of Any Value to Another. If not, I caution you that the Bureau of Prisons believes in, and practices, progressive discipline, and repetitive behavior of this sort will likely result in harsher consequences.

(Id.) This finding was upheld on appeal. (Doc. 1, at 20, 49-50, 53.) "Based on our review of the disciplinary record, we find the required disciplinary procedures were substantially followed. Each of your Due Process rights were upheld during the discipline process. The greater weight of the evidence supports the DHO's decision, and the sanctions imposed were commensurate to the severity level of the offense and in compliance with policy." (Id. at 53.)

Harrison contends that the incident report was issued in retaliation for him exercising his First amendment rights and that his due process rights were violated. He also claims that BOP employees conspired against him, discriminated against him, and violated his equal protection rights. He seeks expungement of the incident report, restoration of his good conduct time, adjustment of his custody classification and transfer to a federal facility in Virginia.

**II.    Discussion**

A habeas petition may be brought by a prisoner who seeks to challenge either the fact or duration of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 494 (1973); Tedford v.

Hepting, 990 F.2d 745, 748 (3d Cir. 1993). "Habeas relief is clearly quite limited: 'The underlying purpose of proceedings under the 'Great Writ' of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful.'" Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002) (quoting *Powers of Congress and the Court Regarding the Availability and Scope of Review*, 114 Harv.L.Rev. 1551, 1553 (2001)). Conversely, claims that do not directly implicate the fact or duration of confinement, may not be pursued by way of a habeas petition. See id. at 542. Harrison's claims of conspiracy, retaliation, discrimination and equal protection, are not properly pursued in a habeas corpus petition. Consequently, the claims will be dismissed without prejudice to Harrison's rights to pursue them in a properly filed civil rights action.[2]

---

[2] Even if Harrison could pursue the retaliation claim in a habeas petition, he would not be successful. In Rauser v. Horn, the Third Circuit defined the elements of a prisoner's cause of action for retaliation and the burden he must carry to succeed in that claim. See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001). First, the prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. See id. at 333 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 389 (6th Cir. 1999). Next, the prisoner must show that he has suffered some adverse action at the hands of prison officials. See Rauser, 241 F.3d at 333 (citing Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). A prisoner can satisfy this prong by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. See id. The last Rauser prong requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The court employs a burden-shifting regime to determine whether a causal link exists. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. See id. (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. See id. If the defendants prove that they would have

To the extent that he argues violations of his due process rights in the context of the disciplinary hearing process, and that this violation resulted in a loss of twenty-seven days of good conduct time, such a claim is properly the subject of this habeas petition because it directly impacts the duration of Harrison's confinement. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an

---

made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. See id. at 334.

It is conceivable that, in certain circumstances, evidence of retaliatory motive on the part of a charging officer and a disciplinary hearing officer might be relevant to the question of whether a particular disciplinary adjudication violated due process in the context of § 2241. However, Harrison is unable to establish a causal link between the alleged adverse action and the exercise of his constitutional rights. He alleges that the day prior to the issuance of the incident report at issue, he was present at a town meeting regarding the legal mail policy, and, when he voiced his opinion on the policy, he was told to by Counselor Wheeler to shut his mouth. (Doc. 1, at 3.) It is his contention that he received the incident report in retaliation for the exercise of his First Amendment rights at the town meeting. (Id.) Yet, Counselor Wheeler had no involvement in the issuance of the incident report. He was neither the reporting nor the investigating officer. There is simply no evidence of a causal link in the record such that Harrison could establish that the incident report was issued in retaliation for the exercise of his First Amendment rights.

investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly unless circumstances beyond the control of the investigator intervene. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. Based upon the seriousness of the offenses, and because one of the charged offenses was categorized as high, the matter was referred for a disciplinary hearing.

Moderate and High Category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*. See BOP Program Statement P5270.07 at 23-24. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564 (1974).

Harrison raises a multitude of issues including that the UDC hearing was untimely and

that an alternate DHO conducted his hearing. Such allegations do not state per se constitutional claims. See Jackson v. Cain, 864 F.2d 1235, 1251 (5th Cir.1989) (failure to follow procedural regulations "does not establish a violation of due process, because constitutional minima may nevertheless have been met" (internal quotation and citation omitted)). Instead, because Harrison lost good time, Wolff governs review of his disciplinary proceedings. It is undisputed that Harrison was provided with written notice of the charges against him at least twenty-four hours in advance of the hearing, he was afforded the opportunity to call witnesses and to present documentary evidence in his defense[3], and he was supplied with a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff, 418 U.S. at 564.

Harrison also contests the sufficiency of the evidence. The DHO's decision is required to be supported by some evidence in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young, 926 F.2d at 1402-03 (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was some evidence from which the conclusion of the tribunal could be deduced. See Hill, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is any evidence in the record that could support the DHO's conclusion. See id.

---

[3]To the extent that he argues he was not provided with a transcript of the phone call at issue, this argument will be addressed in the sufficiency of the evidence discussion.

In concluding that Harrison committed the prohibited acts, the DHO relied on the statement of the reporting officer, phone records, records of inmate account withdrawals and deposits, money order receipts, and copies of pertinent mail envelopes. Inasmuch as Harrison complains that the DHO did not provide him with a transcript of the telephone call at the hearing, it is clear from the record that the DHO did not rely on the transcript in arriving at a finding of guilt. This argument is therefore without merit.

In considering the evidence, as recited in the statement of facts section, *supra*, the court finds that there was "some evidence" to support the DHO's decision and, in doing so notes that "[a]scertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. Hill, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Harrison's claim that there was insufficient evidence to support the DHO's decision.

### III. Conclusion

For the reasons set forth above, Harrison's conspiracy, retaliation, discrimination and equal protection claims will be dismissed without prejudice to his right to pursue them in a properly filed civil rights action. The habeas corpus petition will be denied.

An appropriate order follows.

BY THE COURT:

/s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

Dated: June 19th, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM HENRY HARRISON, | : | CIVIL NO . 3:CV-07-0570 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WARDEN CAMERON LINDSAY, | : | |
| USP CANAAN, FEDERAL BUREAU | : | |
| OF PRISONS, | : | |
| | : | |
| Respondent | : | |

## ORDER

AND NOW, to wit, this 19th day of June 2008, for the reasons set forth in the accompanying memorandum, it is hereby **ORDERED** that:

1. Petitioner's conspiracy, retaliation, discrimination and equal protection claims are DISMISSED without prejudice to his right to pursue them in a properly filed civil rights complaint.

2. The petition for writ of habeas corpus is DENIED.

3. The Clerk of Court is directed to TERMINATE all pending motions (Docs. 11, 12.)

4. The Clerk of Court is directed to CLOSE this case.

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court